UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION,<br><br>Defendant. | Case No.: 18-CV-1292 JLS (KSC)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR STAY**<br><br>(ECF No. 9) |

Presently before the Court is Defendant and Counterclaimant National Strength and Conditioning Association's (the "NSCA") Motion to Dismiss or Stay Pending Resolution of the Underlying State and Federal Lawsuits ("Mot.," ECF No. 9). Also before the Court are Plaintiff and Counterdefendant National Casualty Company's ("National Casualty") Response in Opposition to ("Opp'n," ECF No. 14) and Defendant's Reply in Support of ("Reply," ECF No. 16) the Motion, as well as National Casualty's ("Pl.'s Supp. Br.," ECF No. 19) and the NSCA's ("Def.'s Supp. Br.," ECF No. 20) Supplemental Briefs filed in response to the Court's December 27, 2018 Order Requesting Supplemental Briefing. *See* ECF No. 18. The Court vacated the hearing on the Motion and took the matter under submission without oral argument. ECF No. 17. Having considered the parties' arguments and the law, the Court **DENIES** the NSCA's Motion for the reasons stated below.

/ / /

# FACTUAL BACKGROUND

## I. The Insurance Policies

### A. *The Primary Policy*

National Casualty issued a Commercial General Liability policy to the NSCA, identified as Policy No. KRO0000003279700, for the period February 1, 2013, to February 1, 2015 (the "Primary Policy"). Compl. ¶ 36. The Primary Policy provides Commercial General Liability Coverage pursuant to Form CG 00 01 12 07 (the "CGL Form"), *id.* ¶ 37, which contains a section entitled "Coverage B Personal and Advertising Injury Liability" ("Coverage B"). *Id.* ¶ 38. Coverage B provides:

> [National Casualty] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [National Casualty] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [National Casualty] will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. [National Casualty] may, at [its] discretion, investigate any offense and settle any claim or "suit" that may result.

*Id.* ¶ 39. The term "personal and advertising injury" is defined in the Commercial General Liability Broadening Endorsement of the Primary Policy as "injury, including consequential 'bodily injury,' arising out of . . . d. Any publication of material including, but not limited to[,] oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." *Id.* ¶ 40. The Primary Policy excludes coverage for "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" *id.* ¶ 41, and "'[p]ersonal and advertising injury' arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, if done at the direction of the insured with knowledge of its falsity." *Id.* ¶ 42.

The Primary Policy includes coverage for Supplementary Payments, whereby National Casualty agrees to pay "[a]ll court costs taxed against the insured in the 'suit.' However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured." *Id.* ¶ 43.

Under the Primary Policy, the NSCA is obligated immediately to provide National Casualty with any notices or legal papers received in any suit, as well as cooperate with National Casualty in the investigation, defense, or settlement of any suit. *Id.* ¶ 44.

### *B.     The Excess Policy*

National Casualty also issued an excess liability policy to the NSCA, identified as Policy No. XKO0000003279800, for the period February 1, 2013, to February 1, 2014 (the "Excess Policy"). *Id.* ¶ 45. The Commercial Excess Liability Coverage Form in the Excess Policy provides:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations contained in the applicable 'controlling underlying insurance', unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable 'controlling underlying insurance[.]'

*Id.* ¶ 46. Under the Excess Policy, National Casualty agrees to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'injury or damage' to which insurance provided under this Coverage Part applies." *Id.* ¶ 47. The Excess Policy defines "retained limit" as "the available limits of 'controlling underlying insurance' applicable to the claim," *id.* ¶ 48, and defines "controlling underlying insurance" as "any policy of insurance or self-insurance listed in the Declarations under the Schedule 16 of 'controlling underlying insurance[.]'" *Id.* ¶ 49. The Schedule of Controlling Underlying Insurance in the Excess Policy identifies the Primary Policy. *Id.* ¶ 50.

/ / /

/ / /

## II. The Underlying Litigation

On May 12, 2014, CrossFit, Inc. ("Crossfit") filed a lawsuit (the "Federal Lawsuit") against the NSCA in this Court, *CrossFit, Inc. v. National Strength and Conditioning Association*, No. 3:14-CV-1191 JLS (KSC) (S.D. Cal. filed May 12, 2014). *Id.* ¶¶ 7, 9. The Second Amended Complaint, filed June 26, 2017, alleges causes of action for False Advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a), and California Business & Professions Code section 17500; Unfair Competition pursuant to California Business & Professions Code section 17200; and Trade Libel, *id.* ¶ 10, and alleges that the NSCA published and distributed knowingly false, misleading, and or deceptive statements to customers, potential customers, potential trainers, and the U.S. Military about CrossFit's accreditation and injury rates. *Id.* ¶ 11. National Casualty has defended the NCSA in the Federal Lawsuit subject to a reservation of rights. *Id.* ¶ 13.

On May 2, 2016, the NSCA filed a lawsuit (the "State Lawsuit"), *National Strength and Conditioning Association v. Glassman*, No. 37-2016-00014339-CU-DF-CTL (S.D. Super. Ct. filed May 2, 2016), against CrossFit, its founder and Chief Executive Officer, and several of its employees, alleging causes of action for Trade Libel, Defamation, and Unfair Business Practices. *Id.* ¶¶ 7, 14. National Casualty has been paying for the NSCA to prosecute its affirmative claims against CrossFit in the State Lawsuit. *Id.* ¶ 15.

On June 21, 2016, National Casualty informed the NSCA that the NSCA had the right to choose independent counsel for its defense pursuant to California Civil Code section 2860. *See id.* ¶ 16. The NSCA exercised its right to choose independent counsel in July or August 2017. *Id.* ¶ 17. The NSCA's independent counsel, Noonan Lance Boyer & Banach LLP ("Noonan Lance"), filed a notice of appearance in the Federal Lawsuit in August 2017 and a notice of appearance in the State Lawsuit in February 2018. *Id.* ¶¶ 18, 21. Prior to those dates, National Casualty had been paying Manning & Kass, Ellrod, Ramirez, Trester LLP ("Manning & Kass") to represent the NSCA in the Federal and State Lawsuits. *Id.* ¶¶ 19, 22. Since August 2017 and February 2018, National Casualty has been paying both Manning & Kass and Noonan Lance to represent the NSCA in the Federal

and State Lawsuits, respectively. *Id.* ¶¶ 20, 23.

On February 2, 2017, CrossFit moved for sanctions against the NSCA in the Federal Lawsuit. *Id.* ¶ 24. CrossFit's motion accused the NSCA of failing to produce numerous documents in response to discovery, deliberately withholding documents, making false statements under oath, and violating the Court's discovery Orders. *Id.* ¶ 25. The Court issued an Order on May 26, 2017, granting in part the motion for sanctions, *id.* ¶ 26, and concluding that the NSCA had withheld documents and lied under oath. *Id.* ¶ 27. As a result, the Court ordered the NSCA to pay all costs incurred by CrossFit to commission a neutral forensic analysis of the NSCA's servers, *id.* ¶ 28, and to pay $73,550.83 to CrossFit as monetary sanctions. *Id.* ¶ 29. The Court also awarded CrossFit a number of issue and adverse inference sanctions against the NSCA, including that the NSCA made false statements with the intention of disparaging CrossFit and that the NSCA was aware of the misleading nature of its statements. *Id.* ¶ 30. Although the NSCA asked the Court to reconsider, *see id.* ¶ 31, the Court denied the NSCA's motion. *Id.* ¶ 32.

On March 1, 2018, CrossFit moved for sanctions against the NSCA in the State Lawsuit, *id.* ¶ 33, similarly accusing the NSCA of failing to produce numerous documents in response to discovery requests, deliberately withholding documents, making false statements under oath, and violating prior discovery orders. *Id.* ¶ 34. On May 17, 2018, the discovery referee in the State Lawsuit awarded CrossFit monetary sanctions against the NSCA, ordering the NSCA to reimburse CrossFit's attorneys' fees in the amount of $406,484.39 and expenses in the amount of $4,130.51. *Id.* ¶ 35.

The NSCA voluntarily dismissed the State Lawsuit on December 3, 2018. *See* Register of Actions No. 170.[1] On January 4, 2018, the Discovery Referee in the State

///

---

[1] The Court can *sua sponte* take judicial notice of the docket of the underlying State Lawsuit. *See, e.g.*, *Headwaters, Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (holding that courts may take judicial notice of the docket in related cases because materials from a proceeding in another tribunal are appropriate for judicial notice)).

Lawsuit recommended that the Superior Court not vacate the dismissal despite CrossFit's objections. *See* Register of Actions No. 183.

### III. The Instant Litigation and Motion

National Casualty filed this declaratory relief action on June 14, 2018, *see generally* ECF No. 1, "for the purpose of construing and interpreting the terms of insurance contracts and for a determination of the rights and obligations, if any, of the parties arising from the insurance contracts issued by National Casualty to the NSCA." *Id.* ¶ 6. Specifically, "National Casualty seeks a declaratory judgment that it does not owe a duty to prosecute, defend or indemnify the NSCA for any of the claims alleged in the Federal Lawsuit and the State Lawsuit." *Id.* ¶ 8; *see also* Prayer ¶¶ 1–52. Among the over fifty declarations National Casualty seeks are declarations that it is entitled to reimbursement from the NSCA for certain litigation costs expended in the Federal and State Lawsuits. *See* Prayer ¶¶ 9, 21, 26, 31, 36, 50.

The NSCA filed the instant Motion on July 12, 2018. *See generally* ECF No. 9.

## LEGAL STANDARD

The federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declarations, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). Because "the Declaratory Judgment Act is 'deliberately cast in terms of permissive, rather than mandatory, authority,'" *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)), once jurisdiction is established, courts have discretion whether to entertain an action for a declaratory judgment. *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494. But "this discretion is not unfettered," and "[a] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Dizol*, 133 F.3d at 1223 (quoting *Pub. Affairs Assocs., Inc.*, 369 U.S. at 112). Indeed, "this discretionary

jurisdictional rule does not apply to '[c]laims that exist independent of the request for a declaration.'" *Scotts Co. v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012) (quoting *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998)). Consequently, "[a] district court may, in its discretion, stay or dismiss a federal case in favor of related state proceedings: (1) when an action seeks only declaratory relief . . . , or (2) when exceptional circumstances exist." *Id.* (citing *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282–88 (1995); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983)).

In the former situation, the Ninth Circuit has elaborated on the *Brillhart* factors articulated by the Supreme Court to determine whether to entertain an action under the Declaratory Judgment Act: "the district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Dizol*, 133 F.3d at 1225 (citing *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371–73 (9th Cir. 1991)). The pendency of a state court action alone does not require a district court to refuse federal declaratory relief. Rather, "if there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court." *Id.* (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366–67 (9th Cir. 1991)).

But "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief." *Id.* (citing *Chamberlain*, 931 F.2d at 1367). Indeed, "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically" and, "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Id.* (citing *Chamberlain*, 931 F.2d at 1367). This is because the other claims may "provide an independent basis for federal diversity jurisdiction," rendering "the district court . . .

without discretion to remand or decline to entertain these causes of action." *Id.* at 1225 n.6. "If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation." *Id.* at 1225–26 (citing *Chamberlain*, 931 F.2d at 1367–68).

Such "'independent' claims are instead evaluated under the *Colorado River* doctrine," *Scotts Co.*, 688 F.3d at 1158 (citing *Snodgrass*, 147 F.3d at 1167), pursuant to which a federal court may stay a federal action in favor of a related state proceeding "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). "To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011) (quoting *Colo. River*, 424 U.S. at 818). The Ninth Circuit has "recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal: (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." *Id.* at 978–89 (footnote omitted) (citing *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002)).

## ANALYSIS

The NSCA requests that the Court "dismiss[], or, in the alternative, stay[] this action pending resolution of the underlying . . . [State Lawsuit] and [Federal Lawsuit]" pursuant to *Brillhart*, 316 U.S. 491, and *Montrose Chemical Corporation v. Superior Court*, 6 Cal.

4th 287 (1993). Not. of Mot. at 1. Applying the proper precedents, however, the Court finds no justification to dismiss or stay this action.

First, the Court determines that the statutory requirements for diversity jurisdiction are met: National Casualty was incorporated in Wisconsin with its principal place of business in Arizona, *see* Compl. ¶ 1, while the NSCA was incorporated and has its principal place of business in Colorado. *Id.* ¶ 2. National Casualty also alleges that "the amount in controversy, including the potential costs of defending and indemnifying the NSCA with regard to the Underlying Lawsuit, exceeds $75,000." *Id.* ¶ 4. Consequently, the complete diversity and statutory amount requirements are met. *See* 28 U.S.C. § 1332.

Second, the Court must determine whether National Casualty seeks relief independent of its declaratory relief claims, thereby mandating federal jurisdiction. The Court determines that it does. Here, National Casualty seeks a declaration that it is entitled to reimbursement from the NSCA for a variety of costs, including "all Forensic Analysis Costs expended by National Casualty in the Federal Lawsuit," Compl. ¶ 9; "all amounts incurred and paid, after the court's award of Issue Sanctions in the Federal Lawsuit, to defend the NSCA against the claim for False Advertising under the Lanham Act," *id.* ¶ 21; "all amounts incurred and paid to defend the NSCA against the claim for False Advertising under Section 17500," *id.* ¶ 26; "all amounts incurred and paid to defend the NSCA against the claim for Unfair Competition," *id.* ¶ 31; "all amounts incurred and paid to defend the NSCA against the claim for Trade Libel," *id.* ¶ 36; and "all amounts incurred and paid to fund the prosecution of the State Lawsuit." *Id.* ¶ 50. Although styled as declaratory relief claims, National Casualty's "request for reimbursement is independent of the request for declaratory relief." *See United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1114 (9th Cir. 2001). Accordingly, federal jurisdiction is mandatory and the Court must **DENY** the NSCA's request for dismissal. *See, e.g.*, *id.* at 1115; *see also Hanover Ins. Co. v. Poway Acad. of Hair Design, Inc.*, 174 F. Supp. 3d 1231, 1235 (S.D. Cal. 2016).

Third, the Court must determine whether the NSCA has presented "exceptional circumstances" such that a stay is permissible under the *Colorado River* doctrine. *See, e.g.*,

*Vasquez v. Rackauckas*, 734 F.3d 1025, 1040 (9th Cir. 2013). The Court determines that the NSCA has not. To reiterate, the Ninth Circuit has enumerated eight factors for assessing the appropriateness of a stay under the *Colorado River* doctrine:

> (1) [W]hich court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceeding can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street*, 656 F.3d at 979 (citing *Holder*, 305 F.3d at 870). "[A]ny doubt as to whether a factor exists should be resolved against a stay." *Id.*

"The first two factors are irrelevant here because the dispute does not involve any property and both forums are located in San Diego." *See Hanover Ins. Co.*, 174 F. Supp. 3d at 1236.

As for the third factor, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *R.R. St.*, 656 F.3d at 979 (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). But "[t]he mere possibility of piecemeal litigation does not constitute an exceptional circumstance." *Id.* (citing *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990)). "Instead, the case must raise a 'special concern about piecemeal litigation,' . . . which can be remedied by staying or dismissing the federal proceeding." *Id.* (quoting *Travelers Indem. Co.*, 914 F.2d at 1369) (citing *Moses H. Cone*, 460 U.S. at 20–21).

Here, the Court concludes that there is minimal risk of piecemeal litigation. The NSCA argues that, "[t]o grant the relief requested by National Casualty, this Court would necessarily have to determine – not based on supposed discovery violations, but based on actual contested facts – that the NSCA acted intentionally and knowingly published false

materials," which is "at the center of the State and Federal Lawsuits." Mot. at 11. National Casualty's Complaint, however, makes clear that it is seeking a determination based *only* on the issue sanctions imposed by the Court in the Federal Lawsuit: among other things, National Casualty seeks a declaration that "[t]he Issue Sanctions establish that the NSCA knowingly published false material about CrossFit" and "[t]he Issue Sanctions establish that the NSCA intended to disparage CrossFit through the publication of false material." *See* Compl. Prayer ¶¶ 12–13. The Court therefore agrees with National Casualty that, "[b]y relying on the determinations already made by the district court, National Casualty does not seek to prove (and in fact cannot impact or change) CrossFit's claims against the NSCA." Opp'n at 22 (emphasis in original).

Even if that were not the case, the odds that the NSCA will be litigating the truth or falsity of its statements about CrossFit is remote in both the State and Federal Lawsuits. In the State Lawsuit, the NSCA alleged that CrossFit made several false statements about the NSCA, including that the NSCA had made knowingly false claims about CrossFit, *see, e.g.*, Declaration of Genevieve M. Ruch in Support of Motion ("Ruch Decl."), ECF No. 9-4, Ex. C ¶¶ 12–16, as alleged in the Federal Lawsuit. *See* Ruch Decl. Ex. B ¶¶ 34–63; Ruch Decl. Ex. D ¶¶ 103–45. It is conceivable that CrossFit might have raised the truth of its allegedly false statements as a defense, thereby leading the Superior Court to consider whether the NSCA had knowingly made false claims about CrossFit, but the NSCA has voluntarily dismissed the State Lawsuit and the Discovery Referee has recommended that the Superior Court not vacate the dismissal. *See* Declaration of Genevieve M. Ruch in Support of Reply ("Ruch Reply Decl."), ECF No. 20-1, Ex. A. Although the Superior Court has yet to rule on the Discovery Referee's recommendation, it appears unlikely that the NSCA will be litigating the issue of whether it knowingly made false statements about CrossFit in the State Litigation.

It is also unlikely that the NSCA will be litigating this issue in the Federal Lawsuit, in which CrossFit alleges that the NSCA knowingly made false statements about CrossFit. *See generally* Ruch Decl. Ex. D. On May 26, 2017, the Court imposed various issue and

adverse inference sanctions for the NSCA's discovery misconduct, *see* Compl. ¶¶ 26–27, 30, including that "[i]t is taken as established that the NSCA made the false statement in the Devor Study with the intention of disparaging CrossFit and thereby driving consumers to the NSCA" and "[i]t is taken as established that the NSCA was aware of the misleading nature of the Erratum." Compl. Ex. C at 12. Although the NSCA sought reconsideration of the issue sanctions, *see* Compl. ¶ 31, its request was denied. *See id.* ¶ 32; *see also* Compl. Ex. D, ECF No. 1-5. Consequently, should the Federal Lawsuit proceed to trial, the NSCA will not be litigating these issues, which are now "taken as established." *See* Compl. Ex. C at 12. Although the NSCA has declared its intention to appeal the Order imposing the sanctions, *see, e.g.*, Mot. at 16, any appeal would necessarily address the propriety of imposing the sanctions, not whether the NSCA knowingly made false statements about CrossFit. It therefore seems unlikely that the NSCA will be litigating that issue in the Federal Lawsuit. "Because each case involves different legal issues, resolution of the State [and Federal Lawsuits] will not affect the Court's decision in this case"; this factor therefore weighs against granting a stay. *See Hanover Ins. Co.*, 174 F. Supp. 3d at 1237.

Turning to the fourth factor, it is clear that the Federal Lawsuit was filed first, the State Lawsuit was filed second, and the instant action was filed last. But "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the . . . actions." *Moses H. Cone*, 460 U.S. at 21. Here, it is clear that more progress has been made in the Federal and State Lawsuits, meaning this factors weighs in favor of the NSCA's requested stay. *See, e.g.*, *Colo. River*, 424 U.S. at 820.

Regarding the fifth factor, "the presence of state law issues weighs in favor of a stay only in rare circumstances." *Hanover Ins. Co.*, 174 F. Supp. 3d at 1237 (citing *Moses H. Cone*, 460 U.S. at 25–26; *R.R. St.*, 656 F.3d at 980). "As with most insurance coverage disputes, state law provides the rules of decision" here. *See R.R. St.*, 656 F.3d at 980. But "[b]ecause the cases here involve 'routine issues of state law,' . . . this factor does not weigh against jurisdiction." *Id.* at 980–81 (citing *Travelers Indem. Co.*, 914 F.2d at 1370).

As to the sixth factor, "[a] district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *Id.* at 981. "Plaintiff in this case is not a party to the State [or Federal Lawsuit], and the issues presented in this case—the scope of Plaintiff's insurance policy—are not addressed in the State [or Federal Lawsuit]." *See Hanover Ins. Co.*, 174 F. Supp. 3d at 1237. "Therefore, [National Casualty] cannot be adequately protected by the state court [or prior federal] proceeding, and this factor weighs against granting a stay." *See id.*

With respect to the seventh factor, "[f]orum shopping refers to the practice of choosing the most favorable jurisdiction or court in which a claim might be heard." *Id.* at 981 (citing Black's Law Dictionary 726 (9th ed. 2009)). The Ninth Circuit has indicated that a *Colorado River* stay may be appropriate "when it [i]s readily apparent that the federal plaintiff was engaged in forum shopping." *Id.* (citing *Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989); *Am. Int'l Underwriters*, 843 F.2d at 1255–56). "Here, although Plaintiff chose federal court over state court, nothing suggests that the choice was made because federal court would provide a more favorable jurisdiction than state court." *Hanover Ins. Co.*, 174 F. Supp. 3d at 1238. Accordingly, this factor weighs against a stay.

Finally, "the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal." *R.R. St.*, 656 F.3d at 982 (internal quotation marks omitted) (quoting *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005)). "The Plaintiff in this case is not a party to the State [or Federal Lawsuits]. Moreover, the outcome of the State [and Federal Lawsuits] will not necessarily resolve the instant action because each case involves different legal issues." *See Hanover Ins. Co.*, 174 F. Supp. 3d at 1238. Consequently, "resolution of the State [or Federal Lawsuit] will not necessarily resolve the issues in the instant action[,] . . . weigh[ing] against granting [the NSCA's] motion to stay." *See id.*

Because the balance of the *Colorado River* factors weighs against staying this case pending resolution of the State or Federal Lawsuit, the Court determines that there are no "exceptional circumstances" such that the Court should disregard its "virtually unflagging

obligation" to exercise its jurisidction. *See, e.g.*, *Arctic Zero, Inc. v. Aspen Hills, Inc.*, No. 17-CV-00459-AJB-JMA, 2017 WL 5569850, at *10 (S.D. Cal. Nov. 20, 2017); *Bennett v. Forbes*, No. 17CV464-MMA (KSC), 2017 WL 4557215, at *5 (S.D. Cal. Oct. 12, 2017); *Nautilus Ins. Co. v. Day to Day Fashion, Inc.*, No. CV 17-01649 AFM, 2017 WL 5643182, at *3 (C.D. Cal. Aug. 8, 2017); *Jackson Nat'l Life Ins. Co. v. Ceaser*, No. CV16-2193 PSG (AJWX), 2016 WL 10907058, at *4 (C.D. Cal. June 29, 2016); *Hanover Ins. Co.*, 174 F. Supp. 3d at 1238; *Transam. Life Ins. Co. v. Jurin*, No. C 14-01881 LB, 2015 WL 355717, at *8 (N.D. Cal. Jan. 27, 2015). Accordingly, the NSCA's Motion is **DENIED**.

## CONCLUSION

In light of the foregoing, the Court **DENIES** the NSCA's Motion (ECF No. 9).

**IT IS SO ORDERED.**

Dated: February 11, 2019

Hon. Janis L. Sammartino
United States District Judge