UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CASUALTY COMPANY,<br><br>           Plaintiff,<br><br>v.<br><br>NATIONAL STRENGTH AND CONDITIONING ASSOCIATION,<br><br>           Defendant. | Case No.: 18-CV-1292 JLS (KSC)<br><br>**ORDER: (1) DENYING WITHOUT PREJUDICE MOTIONS FOR SUMMARY JUDGMENT, AND (2) DENYING AS MOOT NSCA'S MOTION TO CONTINUE SUMMARY JUDGMENT HEARING**<br><br>(ECF Nos. 49, 56, 110) |
| NATIONAL STRENGTH AND CONDITIONING ASSOCIATION,<br><br>           Counter-Claimant,<br><br>v.<br><br>NATIONAL CASUALTY COMPANY,<br><br>           Counter-Defendant. | |

Presently before the Court are Plaintiff and Counter-Defendant National Casualty Company's ("NCC") Motion for Summary Judgment ("Pl.'s MSJ," ECF No. 49) and Defendant and Counter-Claimant National Strength and Conditioning Association's ("NSCA") Motion for Partial Summary Judgment ("Def.'s MPSJ," ECF No. 56), as well as NSCA's Motion to Continue the July 2, 2020 Summary Judgment Hearings for the

Purposes of Conducting Mediation with CrossFit and NCC ("Mot. to Continue," ECF No. 110). The Court concludes that the Motions are appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having carefully considered the Parties' arguments, evidence, and the law, the Court **DENIES WITHOUT PREJUDICE** both Plaintiff's Motion for Summary Judgment and Defendant's Motion for Partial Summary Judgment and **DENIES AS MOOT** NSCA's Motion to Continue.

## BACKGROUND

### I.  The Insurance Policies

#### A.  *The Primary Policy*

National Casualty issued a Commercial General Liability policy to the NSCA, identified as Policy No. KRO0000003279700, for the period February 1, 2013, to February 1, 2014 (the "Primary Policy").[1]  NSCA's (1) Resp. to NCC's Resp. to Undisputed Facts and Add'l Undisputed Facts; & (2) Add'l Undisputed Facts in Resp. to NCC's Add'l Undisputed Facts Asserted in Support of Its Opp'n ("NSCA's Facts, ECF No. 88-2") Nos. 1, 3, 4, 53; NSCA's Resp. to NCC's Stmt. of Undisputed Facts & Conclusions of Law ("NCC's Facts," ECF No. 68-1) No. 1. The Primary Policy provides Commercial General Liability Coverage pursuant to Form CG 00 01 12 07 (the "CGL Form"), NCC's Facts No. 2, which contains a section entitled "Coverage B Personal and Advertising Injury Liability" ("Coverage B"). NSCA's Facts No. 54; NCC's Facts No. 2. Coverage B provides:

> [National Casualty] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. [National Casualty] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [National Casualty] will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

---

[1] The Parties have provided end dates of both February 1, 2014 and February 1, 2015, *compare* NSCA's Facts Nos. 5, 55, *with* NCC's Facts No. 1, although the discrepancy is not material to the instant Motions.

NSCA's Facts Nos. 1, 3, 4, 54; NCC's Facts No. 2. The personal and advertising injury limit of liability is $1 million per offense. NSCA's Facts No. 53.

The term "personal and advertising injury" is defined in the Commercial General Liability Broadening Endorsement of the Primary Policy as "injury, including consequential 'bodily injury,' arising out of . . . [a]ny publication of material including, but not limited to[,] oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." NSCA's Facts No. 2; NCC's Facts No. 3. The Primary Policy excludes coverage for "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" NCC's Facts No. 4, and "'[p]ersonal and advertising injury' arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, if done at the direction of the insured with knowledge of its falsity." NCC's Facts No. 5.

The Primary Policy includes coverage for Supplementary Payments, whereby National Casualty agrees to pay "[a]ll court costs taxed against the insured in the 'suit.' However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured." NCC's Facts No. 6.

### B.  *The Excess Policy*

National Casualty also issued an excess liability policy to the NSCA, identified as Policy No. XKO0000003279800, for the period February 1, 2013, to February 1, 2014 (the "Excess Policy"), which provided $4 million in coverage over the scheduled underlying insurance policy limit of $1 million. NSCA's Facts Nos. 5, 55; NCC's Facts No. 7. The Commercial Excess Liability Coverage Form in the Excess Policy provides that "[t]he insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations contained in the applicable 'controlling underlying insurance.'" NCC's Facts No. 8. The Excess Policy defines "controlling underlying insurance" as "any policy

of underlying insurance.'"  NCC's Facts No. 9.  The Schedule of Controlling Underlying Insurance in the Excess Policy identifies the Primary Policy.  NCC's Facts No. 10.

## II.     The Underlying Litigation

### A.     The Federal Lawsuit

On May 12, 2014, CrossFit, Inc. filed a lawsuit (the "Federal Lawsuit") against the NSCA in this Court, *CrossFit, Inc. v. National Strength and Conditioning Association*, No. 3:14-CV-1191 JLS (KSC) (S.D. Cal. filed May 12, 2014).  NSCA's Facts No. 7; NCC's Facts No. 11.  The initial complaint alleged that a study authored by Steven Devor, Michael Smith, Allan J, Sommer, and Brooke E. Starkoff and published by NSCA (the "Devor Study") used data that was "objectively false."  NSCA's Facts No. 8.  According to CrossFit, "[t]he allegation that nine subjects [in the Devor Study] cited 'overuse or injury' was unfounded and plainly intended to discredit CrossFit by painting it as unsafe due to injury risk."  NSCA's Facts No. 9.  CrossFit asserted causes of action for declaratory relief and violations of the Lanham Act, 15 U.S.C. § 1125(a); False Advertising pursuant to California Business & Professions Code § 17500; and violations of California Business and Professions Code § 17200.  NSCA's Facts Nos. 10, 57; NCC's Facts No. 12.  CrossFit filed a First Amended Complaint on February 25, 2016, adding a cause of action for Trade Libel.  NSCA's Facts at 8 No. 11.

On September 21, 2016, the District Court in the Federal Lawsuit issued an Order granting a motion for partial summary judgment filed by CrossFit on the element of falsity as to each of CrossFit's causes of action against NSCA, finding that CrossFit had presented evidence showing that the injury data published by NSCA was false.  NCC's Facts No. 16.

### 1.     The First Sanctions Motion

On February 2, 2017, CrossFit filed a motion for terminating sanctions (the "First Sanctions Motion") against NSCA in the Federal Lawsuit.  NSCA's Facts No. 35.  In the Sanctions Motion, CrossFit accused NSCA of numerous discovery abuses and sought terminating sanctions or, in the alternative, issue, evidentiary, and monetary sanctions. NSCA's Facts No. 36.  NSCA's panel counsel, Manning & Kass Ellrod, Ramirez, Trester

LLP ("Manning & Kass"), did not send a copy of the First Sanctions Motion or a summary of its specific allegations to NSCA or NCC until after the Court had ruled on it. NSCA's Facts Nos. 37–38, 76. On March 9, 2017, Manning & Kass filed an eleven-page opposition to the First Sanctions Motion, NSCA's Facts Nos. 39–40. The opposition opposed the requested issue, evidentiary, and monetary sanctions in a single paragraph. NSCA's Facts No. 41. NCC's appointed counsel did not share a draft or even the final copy of the opposition with NSCA or NCC before filing, NSCA's Facts Nos. 42, 76, although Manning & Kass did prepare a declaration for Keith Cinea, NSCA's Education/Publications Director, to be submitted with the opposition and communicated with Mr. Cinea about the declaration. NSCA's Facts No. 42, 77. Mr. Cinea later testified that he had not read the title of the declaration on the caption page, although he did read Manning & Kass's description of the First Sanctions Motion, which referred only to a "Motion for Discovery Sanctions." NSCA's Facts Nos. 78, 99–100. In any event, Mr. Cinea did not understand what issue, evidentiary, or terminating sanctions were, and Manning & Kass never explained their implications to him. NSCA's Facts No. 78, 98, 100–01.

On May 26, 2017, the Court granted in part and denied in part CrossFit's First Sanctions Motion (the "First Sanctions Order"). NSCA's Facts No. 43; NCC's Facts No. 17. The Court explicitly noted that the brief submitted on behalf of NSCA was "an eleven-page Opposition with five-and-a-half pages of background, four pages in part opposing terminating sanctions and in part again summarizing relevant background, and a single paragraph opposing issue, evidentiary, and monetary sanctions," NSCA's Facts No. 45, and that NSCA opposed CrossFit's list of thirty potential issue and adverse inference sanctions in a single paragraph. NSCA's Facts No. 48. The Court also noted that, "[i]n its Reply, CrossFit points out the numerous issues the NSCA's Opposition did not address, and therefore tacitly concedes." NSCA's Facts No. 46. The First Sanctions Order also stated that "[a]gain, the Opposition nowhere addresses or even mentions these startling federal-discovery omissions." NSCA's Facts No. 47.

///

The First Sanctions Order found that NSCA's Education Coordinator, Nick Clayton, "admitted that several of the statements in his federal-action declaration, submitted under penalty of perjury, were false." NCC's Facts No. 21. After enumerating additional instances of discovery abuses by NSCA, the Court noted that, "[u]nfortunately, the Court could go on. But the Court does not need to. There is plainly sufficient evidence to find willfulness, bad faith, or fault on the part of NSCA in withholding the recently discovered documents and in lying under oath in the federal proceedings." NSCA's Facts No. 79; NCC's Facys No. 22. The Court found that "nearly every factor weigh[ed] in favor of imposing terminating sanctions," but enforced lessor sanctions, including adverse issue sanctions, a neutral forensic evaluation, and monetary sanctions. NSCA's Facts No. 80.

Specifically, the Court awarded several issue and adverse inference sanctions, including that "[i]t is taken as established that NSCA had a commercial motivation for making the false statement in the Devor Study," "[i]t is taken as established that NSCA and CrossFit are in commercial competition," "[i]t is taken as established that the NSCA made the false statement in the Devor Study with the intention of disparaging CrossFit and thereby driving consumers to the NSCA," and "[i]t is taken as established that the NSCA was aware of the misleading nature of the Erratum." NSCA's Facts Nos. 44, 82; NCC's Facts No. 20. The Court also awarded monetary sanctions against NSCA in the amount of $73,550.83, NCC's Facts No. 18, and imposed against NSCA the costs of a neutral forensic analysis of NSCA's servers to be commissioned by CrossFit. NCC's Facts No. 19. The Court also allowed CrossFit to file a Second Amended Complaint, NSCA's Facts No. 81, which CrossFit filed on June 26, 2017. NSCA's Facts No. 12.

On June 23, 2017, NSCA filed a motion for reconsideration of the First Sanctions Order, NCC's Facts No. 23, which the Court denied on October 19, 2017. NCC's Facts No. 24.

        2.    *The Second Sanctions Motion*

CrossFit filed a renewed motion for terminating sanctions (the "Second Sanctions Motion") on June 20, 2019, alleging further discovery abuses by NSCA. NSCA's Facts

No. 84. On December 4, 2019, the Court entered an Order granting in part and denying in part the Second Sanctions Motion (the "Second Sanctions Order"). NSCA's Facts No. 85; NCC's Facts No. 25. In the Second Sanctions Order, the Court specifically noted deletions by Mr. Cinea and Ms. Madden of presumptively relevant documents. NSCA's Facts No. 92. Mr. Cinea and Ms. Madden later testified that nobody at NCC or Manning & Kass told them that they could delete documents during the course of the Federal Lawsuit. NSCA's Facts Nos. 93–96. Ultimately, the Court concluded that "[n]either CrossFit nor the Court nor the public can trust the veracity of further discovery collected from the NSCA." NSCA's Facts No. 87. Accordingly, the Court issued monetary and issue sanctions against NSCA, ordered NSCA's answers to CrossFit's complaints stricken, and ordered the clerk to enter default against NSCA. NSCA's Facts No. 86; NCC's Facts Nos. 26–28. The monetary sanctions awarded against NSCA were in the amount of $3,997,868.66, NCC's Facts No. 26, and the additional issues sanctions included that "[i]t is taken as established that NSCA's unfair competition and false advertising—including its false statements in the Devor Article, Erratum, Hak Study, various TSAC Report articles about CrossFit, content promoted at NSCA events referencing CrossFit-related injuries, and republication of these false statements—were willful and malicious" and "[i]t is taken as established that the NSCA's unfair competition and false advertising were a material cause of CrossFit's damages." NCC's Facts No. 27.

The Court specifically noted in the Second Sanctions Order that "'NSCA cannot avoid responsibility for its misconduct by blaming its first defense counsel[, Manning & Kass]. . . . Moreover, prior counsel cannot be blamed for the perjury, destruction, and attempted destruction by key NSCA witnesses,' and the NSCA has engaged in a pattern of concealment and destruction of evidence across several lawsuits." NSCA's Facts No. 88; NCC's Facts No. 29. The Court noted that "Noonan Lance [Boyer & Banach, LLP] formally appeared in this action in August 2017. . . . Nonetheless, mass deletions and deletions of potentially relevant documents continued to occur after that date," NSCA's Facts No. 89; NCC's Facts No. 29, and "NSCA has repeatedly and willfully failed to

comply with the Court's May 26, 2017 Order by filing multiple declarations falsely affirming that no documents relevant to this litigation had been destroyed and by continuing to destroy presumptively relevant documents following the filing of those declarations." NSCA's Facts No. 90; NCC's Facts No. 29. The Court therefore concluded that ""it is '[t]he NSCA – not its numerous law firms – [that] is the common denominator and the true bad actor." NSCA's Facts No. 91; NCC's Facts No. 29.

NSCA has indicated that it intends to appeal the First and Second Sanctions Orders on at least the following grounds: (1) the financial burden imposed on NSCA by the First Sanctions Order, with over $5,000,000 paid to Stroz to date, which NSCA will contend is disproportional to the alleged wrongdoing and alleged harm; (2) the availability of far less severe sanctions; (3) the Second Sanctions Order adopted, for the most part, CrossFit's arguments in whole without citation to factual support; (4) the lack of demonstrable harm to CrossFit based on neutral forensic evaluator's findings because of the narrow issues left for trial after the May 2017 Order; and (5) the lack of any showing that CrossFit met its high burden to prove that NSCA acted with an actual intent to deprive CrossFit of information on issues remaining to be tried in the Federal CrossFit Lawsuit. NSCA's Facts No. 52. NSCA has retained Rupa Singh of Niddrie Adams Fuller & Singh as appellate counsel, and NCC's claims administrator, K&K Insurance Group, Inc. ("K&K"), paid the retainer that has been applied to her invoice. NSCA's Facts No. 102.

### B. *The State Lawsuit*

On May 6, 2016, NSCA filed a complaint against CrossFit in Superior Court, *National Strength and Conditioning Association v. Glassman*, No. 37-2016-00014339-CU-DF-CTL (S.D. Super. Ct. filed May 2, 2016) (the "State Lawsuit"). NCC's Facts No. 30. In the State Lawsuit, NSCA sued CrossFit for Trade Libel, Defamation, and Unfair Business Practices. NCC's Facts No. 31. On May 17, 2018, the discovery referee in the State Lawsuit entered a discovery sanctions order against NSCA in the amount of $410,614.90. NCC's Facts No. 32.

///

### III. NCC's Reservation of Rights

Thomas James, Esq., outside corporate counsel for NSCA, tendered the Federal Lawsuit to National Casualty on behalf of NSCA. NSCA's Facts No. 58. On May 16, 2014, NCC, through K&K, sent a reservation of rights letter (the "2014 Letter") to Mr. James, acknowledging the potential for coverage and agreeing to defend NSCA in the Federal Lawsuit subject to a reservation of rights. NSCA's Facts No. 14; NCC's Facts Nos. 13–14. NCC was not provided an opportunity to review the May 2014 Letter before it was issued to NSCA and did not approve the language contained in it. NSCA's Facts No. 60.

The 2014 Letter stated: "We will continue to investigate and defend you in [the Federal Lawsuit] at this time, but we want you to be aware of certain coverage issues." NSCA's Facts No. 15. The 2014 Letter added that, "allegations in the Complaint . . . fit the definition of 'Personal and Advertising Injury' as per the policy language. However, there are exclusions cited above that may apply since the allegations in the Complaint include that you had knowledge of the falsity of the information contained in the study." NSCA's Facts No. 16; NCC's Facts No. 15. The 2014 Letter cited the following specific Policy exclusions:

> a. Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury.["]
>
> b. Material Published with Knowledge of Falsity
>
> "Personal and advertising injury" arising out of publication of material . . . if done at the direction of the in[s]ured with knowledge of its falsity.

NSCA's Facts No. 17; NCC's Facts No. 15. The 2014 Letter stated that National Casualty "will be providing [NSCA] with a defense under a reservation of rights. . . . We will be

assigning the defense of this matter to Jeffrey Lenkov with Manning & Kass." NSCA's Facts No. 18.

The 2014 Letter never explicitly advised NSCA of a conflict of interest between NSCA and NCC created by its reservation of certain rights, NSCA's Facts No. 19, or mentioned NSCA's right to independent counsel. NSCA's Facts Nos. 20, 61. The 2014 Letter also did not seek, and NCC did not obtain, a written waiver from NSCA of its right to independent counsel. NSCA's Facts No. 21.

On June 21, 2016, John Hapner of K&K sent a letter (the "2016 Letter") to NSCA that advised NSCA of its right to independent counsel arising from the 2014 Letter. NSCA's Facts Nos. 22, 62. The 2016 Letter stated:

> [W]e have now concluded that the reservation of rights issued in this matter, and which still is in effect, likely created a right on the part of the NSCA to have independent counsel of its choosing to represent its interests in the CrossFit, Inc. matter. While we believe current counsel is providing a full and complete defense on behalf of NSCA, pursuant to California law, we want to make sure that you are aware of the right of the NSCA to be represented by counsel of its choosing if it so desires. In fact, if the NSCA is pleased with its current representation, the NSCA may waive its right to independent counsel, and if the NSCA chooses to do so, please let us know and we will forward the proper waiver form for signature. . . . [I]f the NSCA does wish to select independent counsel, please provide written advise to K&K as to the name and address of the counsel whom the NSCA selects as its independent defense counsel. . . . Please let us know whether the NSCA wishes to exercise its right to choose independent counsel, and, if so, the contact information for such counsel. If the NSCA chooses to waive such right, please let us know and we will forward the form necessary to do so.

NSCA's Facts Nos. 23–25, 63. NSCA claims that it had been unaware of its right to independent counsel before it received the 2016 Letter, NSCA's Facts No. 28, although it did not invoke its right to independent counsel at that time. NSCA's Facts No. 66.

Mr. James later testified that he had viewed the 2016 Letter as "relatively straightforward in saying, one, NSCA has the right to independent counsel. And if you

choose to have independent counsel, here is how they are engaged, and here is how they are being paid, being procedural." NSCA's Facts No. 67. Based on NCC's representations, Mr. James did not "investigate what NSCA's right to independent counsel entailed in June 2016," NSCA's Facts No. 68, nor did Michael Massik, NSCA's executive director, do anything to educate himself regarding NSCA's right to independent counsel in June 2016. NSCA's Facts No. 69. When NSCA received the 2016 Letter, Mr. James believed "there was no . . . overriding sense that there was a need to have independent counsel," NSCA's Facts No. 70, and, as of June 2016, NSCA was aware of no concerns regarding Manning & Kass's handling of the Federal Lawsuit. NSCA's Facts No. 74. In consultation with Mr. James, Mr. Massik decided not to invoke the right to independent counsel in June 2016. NSCA's Facts No. 71. Accordingly, on behalf of NSCA, Mr. James responded to the 2016 Letter on July 25, 2016 (the "NSCA Response Letter"), NSCA's Facts Nos. 26, 72, stating, in relevant part: "As you know, this case has been ongoing for quite some time, with defense counsel provided to NSCA by the law firm of Manning & Kass, insurance defense counsel appointed by the Insurer. Thus, the timing of your letter is duly noted." NSCA's Facts Nos. 27, 73. NSCA never signed a written waiver of its rights. NSCA's Facts No. 29.

In early 2017, but not later than February 7, 2017, NSCA retained coverage counsel in connection with insurance coverage issues related to another insurer in the Federal Lawsuit. NSCA's Facts No. 75. NCC again wrote to NSCA on July 12, 2017, further reserving its rights and acknowledging that a year before, it had notified NSCA of its right to independent counsel. NSCA's Facts No. 32.

NCC continued defending NSCA through appointed counsel until NSCA invoked its right to independent counsel in August 2017, NSCA's Facts No. 30, after NSCA's coverage counsel had explained the implications of the 2014 Letter, NCC's reservations, and NSCA's rights under California Civil Code section 2860 ("Section 2860"). NSCA's Facts No. 31. It was only after retaining coverage counsel in connection with other coverage issues in the Federal Lawsuit that NSCA understood its rights under Section

2860.  NSCA's Facts No. 33.  After it retained coverage counsel, NSCA retained Noonan Lance as its independent counsel on August 10, 2017.  NSCA's Facts Nos. 34, 83.

### III.     The Instant Litigation and Motions

NCC filed this declaratory relief action on June 14, 2018, *see generally* ECF No. 1 ("Compl."), "for the purpose of construing and interpreting the terms of insurance contracts and for a determination of the rights and obligations, if any, of the parties arising from the insurance contracts issued by National Casualty to the NSCA." *Id.* ¶ 6.  Specifically, "National Casualty seeks a declaratory judgment that it does not owe a duty to prosecute, defend or indemnify the NSCA for any of the claims alleged in the Federal Lawsuit and the State Lawsuit." *Id.* ¶ 8; *see also* Prayer ¶¶ 1–52.  Among the over fifty declarations NCC seeks are declarations that it is entitled to reimbursement from the NSCA for certain litigation costs expended in the Federal and State Lawsuits.  *See* Prayer ¶¶ 9, 21, 26, 31, 36, 50.

NSCA filed its Counterclaim for breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and declaratory relief on July 12, 2018.  *See generally* ECF No. 7 at 28–44 ("Countercl.").  In addition to damages, NSCA sought judicial declarations, including that NCC had to honor all duties under the Primary and Excess Policies.  *See id.* ¶ 66; *see also generally id.* Prayer.

Along with its Counterclaim, NSCA also filed a motion to dismiss or, alternatively, to stay this action pending resolution of the Federal and State Lawsuits under *Brillhart v. Excess Insurance Company*, 316 U.S. 491 (1942), and *Montrose Chemical Corporation v. Superior Court*, 6 Cal. 4th 287 (1993).  *See generally* ECF No. 9.  On February 11, 2019, the Court denied NSCA's motion, *see generally* ECF No. 22, concluding that there was "minimal risk of piecemeal litigation" because NCC's declaratory relief claims were based solely on the issue sanctions already imposed in the Federal Lawsuit and because "the odds that the NSCA w[ould] be litigating the truth or falsity of its statements about CrossFit [wa]s remote in both the Federal and State Lawsuits" given NSCA's voluntary dismissal of the State Lawsuit and anticipated appeal of the First and Second Sanctions Orders in the

Federal Lawsuit. *See id.* at 10–12. Ultimately, the Court concluded, "[b]ecause each case involves different legal issues, resolution of the State [and Federal Lawsuits] will not affect the Court's decision in this case." *Id.* at 12 (quoting *Hanover Ins. Co. v. Poway Acad. of Hair Design, Inc.*, 174 F. Supp. 3d 1231, 1237 (S.D. Cal. 2016)). The Parties therefore proceeded to discovery. *See, e.g.*, ECF Nos. 29, 46, 48, 63, 75.

NCC filed its Motion for Summary Judgment on December 10, 2019, *see generally* ECF No. 49, and NSCA filed its Motion for Partial Summary Judgment on January 10, 2020. *See generally* ECF No. 56. On June 4, 2020, the Court continued the hearing on the Motions for Summary Judgment to accommodate additional briefing on the following issues:

> (1) the sufficiency of the reservation of rights letter from Carolyn Kanalos of K&K Insurance to Thomas James dated May 16, 2014, particularly the necessity of the insurer explicitly informing the insured that there exists a conflict of interest and of the insured's right to independent counsel; (2) whether breach of the duty to defend resulting from the failure to provide independent counsel in a conflict-of-interest situation gives rise to a cause of action for damages or for estoppel; (3) who, if anyone, bears the burden of establishing that there would have been a more favorable outcome but-for any such breach of the duty to defend resulting from the failure to provide independent counsel in a conflict-of-interest situation; and (4) the preclusive effect, if any, of a final judgment following appeal regarding the issue and/or terminating sanctions [in the Federal Lawsuit].

ECF No. 107 at 3. The Parties filed the supplemental briefs on June 18, 2020, *see* ECF Nos. 108 ("Pl.'s Supp. Br."), 109 ("Def.'s Supp. Br."), and NSCA filed the instant Motion to Continue on June 24, 2020. *See* ECF No. 110.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

NCC seeks summary adjudication in its favor as to the following claims and counterclaims: (1) Count I of the Complaint concerning NCC's duty to pay monetary

sanctions awarded against NSCA in the Federal Lawsuit; (2) Count II of the Complaint concerning NCC's duty to pay the forensic analysis costs awarded against NSCA in the Federal Lawsuit; (3) Counts III, V, VII, and IX of the Complaint concerning NCC's duty to defend NSCA in the Federal Lawsuit following entry of the First Sanctions Order on May 26, 2017; (4) Counts IV, VI, VIII, and X of the Complaint concerning NCC's duty to indemnify NSCA in the Federal Lawsuit following entry of the First Sanctions Order on May 26, 2017; (5) Count XI of the Complaint concerning NCC's duty to pay monetary sanctions awarded against NSCA in the State Lawsuit; and (6) Counts I, II, and III of the Counterclaim regarding these same issues. *See* ECF No. 49 at 2–3. A number of the NCC's arguments are premised on the First and Second Sanctions Orders in the Federal Lawsuit and/or the sanctions imposed in the State Lawsuit. *See, e.g.*, Pl.'s MSJ at 11–14, 14–15, 18–22, 22–23, 23–25.

For its part, NSCA seeks summary adjudication on its behalf as to the following: (1) NSCA's first claim for relief in its Counterclaim for breach of contract; (2) Counts III through X of the Complaint on the grounds that (a) NCC is estopped from relying on the First Sanction Order, and/or NCC has a continuing duty to defend NSCA through appeal; and (3) NSCA's third claim for relief in its Counterclaim for declaratory judgment as to NCC's duty to defend NSCA through appeal. *See* ECF No. 56 at 2–3. Both NSCA's affirmative Motion and its opposition to NCC's Motion for Summary Judgment contend that NCC should be estopped from relying on the First and Second Sanctions Orders to deny coverage because of NCC's admitted failure timely to inform NSCA about its right to independent counsel pursuant to Section 2860. *See* Def.'s MPSJ at 21–24; *see also* ECF No. 68 ("Opp'n to Pl.'s MSJ") at 16–21. NCC contends that estoppel is inappropriate because, among other things, NSCA cannot establish detrimental reliance in light of the Court's conclusion in the Second Sanctions Order that "[p]rior counsel cannot be blamed for the perjury, destruction, and attempted destruction by key NSCA witnesses" and that "it is '[t]he NSCA—not its numerous law firms—[that] is the common denominator and

///

the true bad actor.'" ECF No. 85 at 9 (alterations in original) (quoting ECF No. 49-15, Pl.'s Ex. K at 332–33 n. 19).

In short, all roads in this case lead to the First and Second Sanctions Orders, which NSCA (repeatedly) vows to appeal. *See, e.g.*, Def.'s MPSJ at 24–25; Opp'n to Pl.'s MSJ at 2, 8, 9, 11, 13–16; ECF No. 88 at 10; Def.'s Supp. Br. at 9. Among other things, the Court therefore ordered the Parties to address "the preclusive effect, if any, of a final judgment following appeal regarding the issue and/or terminating sanctions [in the Federal Lawsuit]." ECF No. 107 at 3. NCC contends that, "[a]ssuming that NSCA appeals the Court's orders awarding sanctions and entering default against NSCA and that the Ninth Circuit affirms the Court's rulings, the legal and factual findings made by the Court regarding NSCA's conduct and liability vis-à-vis CrossFit will preclude NSCA from relitigating those issues in the coverage action." Pl.'s Supp. Br. at 8. Without citing any authorities, NSCA urges that, "[i]f the [First] and [Second Sanctions] Order[s] are affirmed on appeal, they will be the law of the Federal CrossFit Litigation and will be preclusive as to the discovery omissions," "[b]ut because these orders do not make a factual determination as to National Casualty's misconduct or consider any facts that NSCA published the Devor Article actually knowing that the injury rate was allegedly false, they have no further preclusive effect." Def.'s Supp. Br. at 9–10. NSCA further contends that it "must have the due process opportunity to show – in either the Federal CrossFit Litigation or here – that it made no knowing or intentionally false statements." *Id.* at 10.

The Court concludes that a final judgment on the merits in the Federal Lawsuit likely will preclude NSCA from relitigating in this case any identical issues determined as sanctions in the Federal Lawsuit, including whether NSCA made any false statements knowingly or intentionally. As NCC notes, *see* Pl.'s Supp. Br. at 8 n.2, federal common law determines whether a final judgment in the Federal Lawsuit will preclude relitigating the same issues in this suit. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) ("[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity."). The Supreme Court clarified in *Semtek*, however, that

this means the Court is to apply "the law that would be applied by state courts in the State in which the federal diversity court sits," *id.*, *i.e.*, California law.[2]

"[I]n a new action on a *different cause of action,* the former judgment is not a complete merger or bar, but is effective as a *collateral estoppel,* i.e., it is conclusive on issues actually litigated between the parties in the former action." *Interins. Exch. of the Auto. Club v. Super. Ct.*, 209 Cal. App. 3d 177, 181 (1989) (quoting 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 189, p. 623) (emphasis in original) (citing *Corral v. State Farm Mut. Auto. Ins. Co.*, 92 Cal. App. 3d 1004, 1010 (1979)). The California Supreme Court has recognized that "[t]he doctrine of collateral estoppel precludes relitigation of an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 910 (1986) (quoting *People v. Sims*, 32 Cal. 3d 468, 484 (1982)). Under California law, an insured may be collaterally estopped from relitigating issues determined in a third-party liability action in a subsequent insurance coverage action. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180, 183 (9th Cir. 1993) (holding that assignees of rights under insurance contract stood in shoes of insured and were therefore collaterally estopped from relitigating insured's intent, which had been determined in a state criminal proceeding).

NSCA's main argument against collateral estoppel here is that it "must have the due process opportunity to show – in either the Federal CrossFit Litigation or here – that it made no knowing or intentionally false statements" because "there never was a full and fair opportunity to litigate either (1) the knowing/intentional conduct with respect to the Devor Article; or (2) the discovery omissions, because of National Casualty's breaches and

---

[2] In any event, as NCC notes, *see* Pl.'s Supp. Br. at 8 n.2, "broadly speaking, the principles of preclusion are consistent between California and federal law." *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 552 (C.D. Cal. 2011).

use of conflicted defense counsel." Def.'s Supp. Br. at 9–10. One of these arguments has merit, the other does not.

The fact that the Federal Lawsuit was decided by default in no way impinges on NSCA's due process rights: "A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication" because, "[i]n such a case the 'actual litigation' requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so." *In re Daily*, 47 F.3d 365, 368 (9th Cir. 1995) (footnote omitted). Indeed, generally speaking, "[d]efault judgments are considered 'final judgments on the merits' and are thus effective for the purposes of claim preclusion." *In re Garcia*, 313 B.R. 307, 311–12 (B.A.P. 9th Cir. 2004) (citing *Howard v. Lewis*, 905 F.2d 1318, 1323 (9th Cir.1990)); *see also In re Mercury Eng'g*, 68 F. Supp. 376, 380–81 (S.D. Cal. 1946) ("[A default] judgment is binding . . . . This is the law of California, as well as the law in general, and as declared by the Courts of the United States.") (footnotes omitted). The preclusive effect of such judgments is particularly important where, as here, the issues were decided as a sanction because the sanction serves to "compel[] defendants to play the game and abide by the rules" and "[c]laim and defense preclusion are necessary to make the sanction effective." *See, e.g.*, *In re Garcia*, 313 B.R. at 312 n.10 (quoting 18A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4442).

Here, the Court concluded in the Second Sanctions Order that "[t]he severity and frequency of [NSCA's] bad faith misconduct is as egregious as anything this [C]ourt has ever seen or read in any of the cases." Pl.'s Ex. K at 343 (quoting *Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, No. CV126972FMOJEMX, 2015 WL 12732433, at *46 (C.D. Cal. Dec. 14, 2015)) (first and third alterations in original). In short, allowing NSCA to relitigate the issues disposed of by sanction for its egregious discovery and litigation misconduct would render those sanctions ineffective, rendering issue preclusion based on

those sanctions merited. *See, e.g.*, *Tift v. Ball*, No. C07-0276RSM, 2008 WL 11389462, at *4 (W.D. Wash. Jan. 4, 2008) ("[T]he default judgment in the underlying lawsuit was rendered as a sanction for [the plaintiff]'s failure to abide by this Court's rules. Therefore[,] this Court's finding that a default judgment is a final judgment for purposes of res judicata is justified because it serves to make the sanction effective."); *Greenwich Ins. Co. v. Media Breakaway, LLC*, No. CV08-937 CAS (CTX), 2009 WL 2231678, at *5 (C.D. Cal. July 22, 2009) (concluding, based on arbitration, that the insured was "precluded from arguing that they did not intentionally and illegally launch 'spam attacks' against [the third party victim's] users" in subsequent coverage action), *aff'd*, 417 F. App'x 642 (9th Cir. 2011).

To the extent NSCA contends that it was denied a full and fair opportunity to litigate the sanctions issued in the Federal Lawsuit because of NCC's failure timely to inform NSCA of its right to independent counsel, however, NSCA may have a valid argument. *See, e.g.*, *Manzanita Park, Inc. v. Ins. Co. of N. Am.*, 857 F.2d 549, 554 (9th Cir. 1988) ("[T]he conflict of interest which [conflicted panel counsel] faced . . . precludes the operation of collateral estoppel.") (applying Arizona law). This issue, however, may also definitively be resolved on appeal if the Ninth Circuit affirms the Court's finding in the Second Sanctions Order that "'[t]he NSCA cannot avoid responsibility for its misconduct by blaming its first defense counsel[, Manning & Kass]. . . . Moreover, prior counsel cannot be blamed for the perjury, destruction, and attempted destruction by key NSCA witnesses,' and the NSCA has engaged in a pattern of concealment and destruction of evidence across several lawsuits." NSCA's Facts No. 88; NCC's Facts No. 29. In any event, this issue has not adequately been briefed by the Parties.

In short, it appears that the resolution of the instant Motions for Summary Judgment will be driven by a final judgment on the sanctions issued in the Federal Lawsuit as discussed above, including such issues as whether NSCA made knowing or intentionally false statements and whether NSCA may shift any blame for the sanctioned discovery abuses to its allegedly conflicted panel counsel, Manning & Kass. The Court therefore

**DENIES WITHOUT PREJUDICE** the Motions for Summary Judgment as premature and **DENIES AS MOOT** NSCA's Motion to Continue.

## CONCLUSION

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Summary Judgment (ECF No. 49) and Defendant's Motion for Partial Summary Judgment (ECF No. 56) as premature pending a final determination on the merits in the Federal Lawsuit. The Court therefore **DENIES AS MOOT** NSCA's Motion to Continue (ECF No. 110).

**IT IS SO ORDERED.**

Dated: June 29, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge